No. 9888.

THE MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, ET AL. *v*. THE CITY AND COUNTY OF DENVER.

Decided November 7, 1921.

Suit on bond. Judgment for plaintiff.

*Affirmed in part and reversed in part.*

1. TELEPHONE COMPANIES—*Rates—Excess Charges—Bond.* Bond executed by a telephone company to a city, conditioned for the refund of any judicially determined excess charges, construed

in connection with federal war regulations concerning telephone systems, and judgment ordered accordingly.

*Error to the District Court of the City and County of Denver, Hon. Charles C. Butler, Judge.*

Mr. MILTON SMITH, Mr. CHARLES R. BROCK, Mr. W. H. FERGUSON, Mr. ELMER L. BROCK, for plaintiffs in error.

Mr. JAMES A. MARSH, Mr. NORTON MONTGOMERY, for defendant in error.

*En banc.*

MR. JUSTICE DENISON delivered the opinion of the court.

JUNE 14, 1918, the Public Utilities Commission of the State of Colorado prescribed rates to be charged by the plaintiff in error in the State, including the City and County of Denver. The City claimed that it, and not the State Commission controlled the city rates. The plaintiffs in error thereupon executed a bond to the city conditioned:

"That if it shall be finally adjudged that the said Telephone Company has no right to charge the rates prescribed by the said Public Utilities Commission, and if immediately after it has been so adjudged the Telephone Company shall refund to each and every telephone subscriber in the City and County of Denver the excess collected from such subscriber above the rate that was being charged immediately prior to June 14, 1918, then this obligation shall be void, otherwise to remain and be in full force and effect."

April 6, 1917, the Congress declared war on Germany, and on the 16th of July, 1918, it authorized the President to assume control of all telephone systems and to operate the same, and on the 31st of that month the government took possession and continued in possession until midnight, July 31st, 1919, when by an act of Congress of July 11, 1919, possession was surrendered to the company. This act provided:

"That the existing toll and exchange telephone rates as established or approved by the Postmaster General on or

prior to June 6, 1919, shall continue in force for a period not to exceed four months after this act takes effect, unless sooner modified or changed by the public authorities—state, municipal or otherwise—having control or jurisdiction of tolls, charges and rates, or by contract or by voluntary reduction."

For the four months after taking possession, which ended December 1st, 1919, the company continued the rates prescribed by the Postmaster General, which were in excess of the rates charged immediately before June 14, 1918; and those rates were not modified by the public authorities or changed by contract or voluntary reduction. In November, 1918, the Public Utilities Commission of the state of Colorado reduced the telephone rates from those prescribed by the Postmaster General to the rates which said commission had previously prescribed in June, 1918; and from December 1st, 1919, to February 7th, 1920, the telephone company continued to charge the rates so prescribed. February 7, 1920, it was finally adjudged that the company had no right to charge the rates prescribed by the said Public Utilities Commission.

The City brought suit on the bond. The company admitted its liability for the first period, i. e., from June 14, 1918, to July 31st, 1918, but pleaded and proved payment and was held not further liable for that period. The court below held that for the second period, i. e., while the government had possession, the city could recover nothing, but that it might recover for the third period above mentioned, viz., from the termination of the government's possession, July 31st, 1918, till the expiration of the four months provided in the congressional resolution, that is, to December 1st, 1919, and for the fourth, that is from December 1st, 1919, to February 7th, 1920. We think this judgment was correct, with the exception of the third period. As to the first period there is no question. As to the second, the company had no control over the charges and therefore is not responsible, even if, as is claimed, the strict terms of the bond make it so. As to

the fourth period the company is manifestly liable and had no right whatever to make the charges. As to the third there is great doubt, but a majority of the court is of the opinion that, since the act of Congress returning the telephone properties to the owner provided that the company might make the charges which it did make, subject only to conditions which were never fulfilled, in making them it was exercising a privilege granted by the act which is paramount to the bond, the congress not being restricted by the clause of the constitution against the impairment of contracts. This conclusion is somewhat supported by the suggestion of the equity of such a privilege, because, the property having been out of the owner's control for a considerable time, a short period of readjustment was not unreasonable, and may be fairly said to be the object of the congress in granting the privilege.

These considerations, we think, are an answer to the claim that, immediately upon the surrender by the government, the regulations of the City, which, we have held, controlled the rates in question, took effect, and amounted to a fulfillment of the condition in the joint resolution, "unless sooner modified or changed by the public authorities;" moreover this expression seems rather to refer to a future modification than a past one.

The judgment should be affirmed as to the first, second and fourth periods and reversed as to the third.

MR. JUSTICE TELLER concurring specially:

I concur in so much of the opinion as affirms the judgment as to the first, second and fourth periods, but cannot agree that it should be reversed as to the third.

This is an action on an obligation, which is simply that if the company collects more than the rate charged immediately prior to June 14, 1918, it will refund such collections, if it is finally determined that it has no right to charge those rates. Manifestly a charge which plaintiff in error collects of its free will, when at liberty to collect less, comes

within the obligation of the bond.   To escape from this obligation plaintiff in error must show that it was not responsible for the higher rate charged.   While the government was in control the company was not responsible for the rate, but it is responsible for the rate during the third period because it was not compelled to charge it.   The resolution, in terms, gives the right to reduce rates during the third period. ·

The *privilege* to continue charging the war rate does not affect the agreement to refund under the stipulated conditions.   Plaintiff in error could have charged less than it did, and all sums voluntarily collected are within the plain terms of the bond.